2 Basic Capital v. Dynex et al. Mr. Arnett, you're up first. Thank you, Your Honor. Good morning, and please, the Court. The Court should respectfully reverse the District Court's dismissal of the second amended complaint in this case, and there are three main grounds that I'm going to be arguing. The first is a threshold question, which is that the District Court erred in going outside the allegations of the complaint in order to resolve the motion to dismiss, particularly since it relied on two affirmative defenses. One, a statute of oppose in order to grant dismissal with prejudice as to fraudulent transfer claims, and secondly, the affirmative defense of res judicata in order to grant dismissal with prejudice of the alter ego claims. The res judicata is based on the underlying State Court judgment. In terms of the standards on a motion to dismiss, they're well established. The Court should not go outside the pleadings. The Court should accept all well-pleaded facts as true, and the Court should give the facts in the light most favorable to the plaintiff here. This Court has recognized one limited exception to the rule about not going outside the pleadings, and that is that if materials are attached to a motion to dismiss, the Court may consider them, if they meet a two-part test. Now, the first step is that they have to be referenced or referred to in the plaintiff's complaint, and the second is that they have to be central to the plaintiff's claims, which means they have to be material necessary to establish an essential element of one of the plaintiff's causes of action. The District Court here erred by considering SEC filings, specifically annual report to form 10-Ks, as well as certain selected material from the State Court proceeding, including some of the petitions, although not the live petition or the original petition, and some of the attorney argument and opening statement that was had in the State Court. Where the District Court erred was in leading some of this Court's opinions to effectively create another exception to the rule about not going outside the pleadings on a motion to dismiss, and that is the District Court construed references to taking matters or considering matters by judicial notice as being free from the constraints of the material needing to, A, be referred to in the complaint, and number two, being central to the plaintiff's claims. The, when we decided to and relied principally on this Court's decision in the Scanlon case, which involved a, some wrongful death actions, 1983 actions, arising from the Texas A&M bonfire collapse, and the District Court granted a motion to dismiss after having relied upon a report that had been commissioned by Texas A&M. This Court, in reviewing it, said, it's unclear whether the District Court took judicial notice of this report. It was not actually presented to the Court. There was a hyperlink for it, but if it took judicial notice, it was in error, and in addition, because this report, although mentioned in the complaint, was not central to the plaintiff's claims, and so it held that going outside the pleadings to consider that report was error and reversed the dismissal. Mr. Arnett, I'm getting an impression and clarify for me that, in a way, you're arguing two different things. One is that if it's not mentioned, referenced somehow, incorporated even implicitly into the complaint, cannot be taken judicial notice. If you're saying that, I wish you'd confirm it, but secondly, it seems to me what Scanlon's talking about, there are certain kinds of things for which it is proper to take judicial notice, and this report on the bonfire was not one of them for whatever reasons of credibility or something else. So, what is your argument that the District Court indeed is limited to things that are somehow implicit in the complaint, or do you accept that there's a broader right of which a District Judge has to take judicial notice? So, on a motion to dismiss, on a motion to dismiss, my position that the District Court, in taking judicial notice, is constrained by those two requirements, that the matter be referred to in the complaint, and that it be central to the plaintiff's claims. Now, and I point it to the odd dichotomy that's created when you say, when you create different treatment and say, for example, in this case, Mr. Perry, one of the trial attorneys, provided a declaration where he proved up some documents from the state court. Now, if he was just proving that up as a piece of evidence, and they hadn't asked the court to take judicial notice, clearly, the restrictions in Scanlon would apply. But if you ask the court to take judicial notice, then those restrictions don't apply. So, you've now set up an odd dichotomy that doesn't seem to have any principle behind it. Now, taking judicial notice, for example, on a summary judgment motion, with the purposes of the trial, I think is a different story. But when you're at the pleading stage, and analyzing whether the pleadings state a cause of action, and particularly, in light of the opinions and authorities that say, an affirmative defense has to be apparent from the face of the complaint, for the district court to go well outside the complaint, I mean, you know, the SEC pleadings, or filings are not referencing the complaint, they're certainly not central to the claims. A lot of the lawyer argument in the state court cases, certainly not central to the plaintiff's claims. You know, that's error, and that's a threshold matter, and that should compel reversal. When you say that he took judicial notice, I mean, I used to make my living drafting 10-Ks, so it probably doesn't speak well for me. But what I want to know is, what do you mean he takes judicial notice of it? I mean, I'm missing the significance of it. What did he take notice of in the 10-K, and exactly what does that mean here? What does that translate into? Tractor. So the 10-K was important, actually critical, for the court's decision on the statute of repose on the fraudulent transfer claims. We pled for actual intent to deceive, which means that the statute of repose is, we had a year after we knew or should have known that not only that the transfers occurred, but also of their fraudulent nature. And so the court looked at it, you know, he was pointed to some language in a very long, lengthy 10-K. It actually was a footnote to some of the financial disability. Yeah, I figured. And it said two things. He focused on two things. One, he said, there's a statement here that there's a history of these two entities transferring loans back and forth, and there is a statement that in the past, Dynex, the parent, Dynex Capital, had acquired loans and paid Dynex Commercial, and it gave some of the annual figures. It was $2 million in 1999 and several hundred thousand dollars in 2000. The other point that was in the same footnote was there was a statement that Dynex Commercial had no assets at that point. So that was a 10-K year-ended 2001 filed in March of 2002. And from that, the court said, well, the district court said, you should have known that these 25 transactions that you're complaining about now were A, made, and B, that they were made for no consideration, i.e. that they were fraudulent. In the 10-K, these were consolidated financial statements? Yes, Your Honor. These were consolidated financials. So Dynex Commercial, the subsidiary, didn't have its own financials broken out. They were all rolled up into Dynex Capital. And so even if we get past the threshold point, that does not establish as a matter of law that we knew or should have known that these transactions were fraudulent. It wasn't until we got a judgment in 2015 and deposed Mr. Benedetti in 2016 that we learned that they hadn't paid nothing for these transactions. As a matter of fact, their position at that point was Dynex Capital owned these loans all along, and he had no explanation for why there were these filings in various jurisdictions around the country indicating that Dynex Commercial had been the lender on these. And so it's our position, like the Jandy case, this Dynex is not a simple organization. It's a vertically integrated financial services firm that focused on mortgage loans, buying, selling, originating them, buying them on the open market, and then, in large part, securitizing them by putting them in pools and then selling the bonds that were backed by that pool of mortgages. So it was common and expected that loans would be getting transferred back and forth in and out of the pools and so forth. So the fact that there had been some transfers was not remarkable at all. But it wasn't until we found out that, number one, they hadn't paid anything for them, and number two, they were now taking the position that Dynex Capital owned them all along and that, you know, they just had, I guess, fraudulent or erroneous public filings in all these state real property jurisdictions. Mr. Arnett, with Judge King's permission, is that a sufficient answer, Judge King? Yeah, I guess so. I mean, these were audited, these financial statements. They were. And who was the auditing firm? It was one of the, it was one of the big. One of the big firms, okay. One of the big, big firms. I don't remember if it was Deloitte. I'd have to look at the 10-K. Okay. Counselor, let me take you to where this, where you want us to go, which is to deal with the resolutions on ratio to COTA and statute of repose. So how does all this play out for us? Why don't you take us to that argument? Yeah. Well, I just addressed the statute of repose argument, and that is that where the district court error was, it didn't focus on the fact that the one-year term doesn't start running until the claimant has reason to know of the fraudulent nature of the transaction. And as in the Jandy case, it wasn't until we got the ability to conduct some discovery and get a You could pick up on the fact that these transfers had happened from public records across the country. They were focused on 25 transactions in 16 different states. But it wasn't until we were able to depose Mr. Benedetti and confirm that they paid nothing for these, that we were able to understand the fraudulent nature of them. In terms of the ratio to COTA, the trial court, the basic error that the trial court had was in failing to focus on the requirements, and this is the fourth element of ratio to COTA, that it involved the prior action and the current action involved the same cause of action and the same claim. And at the end of the day, as articulated in the Testmasters case, you know, that is focused on, is there a common nucleus of operative fact? And here, the district court just elided past it. He basically said, well, you could have brought, in other words, like a permissive jointer idea, as long as the claim is in existence, regardless of whether there's a nucleus of common fact, if you could have brought it, then you're barred. Well, that's not the test. It's a transactional test. And so the underlying state court case was focused, from the plaintiff's perspective, on the breach of three loan agreements or loan commitments. And so the nucleus of fact there was, did they have a contract? Who were the parties to the contract? Was there a breach? And what were the damages? The alter ego claims focused on the relationship between Dynex Commercial and Dynex Capital, and in particular, the fact that during that litigation, during the underlying litigation, Dynex Capital began treating Dynex Commercial as though it were just an instrumentality. If it wanted to move loans out of Dynex Commercial to itself, it did that for no money. It stripped it of assets. It engaged in a rather complicated series of transactions, moving its stock around. And ultimately, in order to sort of make it look like it was still an ongoing entity, it enters this litigation cost-sharing agreement, which we didn't find out about until the post-judgment discovery, where Dynex Capital was paying all of the attorney's fees. So there's not a common nucleus of operative fact, and it was error for the court to grant a dismissal of prejudice on the basis of race to the top. All right. Thank you, Mr. Arnier. You've reserved your rebuttal time. We'll hear from Mr. Parrish. Thank you, Your Honors. May it please the court, Ashley Parrish on behalf of Dynex Capital. This case, Your Honors, is an attempt to relitigate a dispute that Plaintiffs filed 20 years ago in state court, seeking to hold both DCI and Dynex Capital responsible for an alleged breach of $160 million loan commitment. Your Honors, the key fact there is that they received a judgment in their favor against DCI, but they received a take-nothing judgment against Dynex Capital, and they elected not to appeal that. As you've heard this morning, the district court found that the second lawsuit, again, calling to hold Dynex Capital responsible for breach of the $160 million loan commitment is barred under both the statute of limitations and principles of res lucata. As you've heard, the other side has three arguments, and I thought I would just walk through each of them. Starting with the judicial notice argument, Your Honors, it's important to emphasize that they do not dispute that these materials, the SEC public filings and the public state court record are subject to judicial notice under 201. Instead, what they are trying to suggest is that there is a new rule that courts cannot take notice of judicially noticeable materials at the motion to dismiss stage. That is contrary to the text of Rule 201. It's contrary to what the Supreme Court has said in its Talab's decision. It's contrary to a long line of this court's decisions that expressly say you can take judicial notice. What they do- Respond to the Texas A&M case that Mr. Arnett has used today. So, Your Honor, that case, also called Scanlon, it's important to recognize that it does not state expressly whether you can take judicial notice. It doesn't address that issue. What it does do is it states, generally, that there is one exception to the rule that you can look outside the pleadings. But Judge King, your decision in the general retail services case that plaintiffs cite in their reply shows the problem with their argument and why you can reconcile those cases. Because general retail services recognizes that taking judicial notice is not considered looking outside the pleadings. It's actually considered part of looking at the Your question shows another way to distinguish that Scanlon A&M case, which is there. The only reason the court gets to considering whether the document was attached to the complaint and central to the claim is it because it already concludes that it's not appropriate for judicial notice. So it goes past that step and then addresses what it thought was the dispositive issue, which is whether you could nonetheless consider materials outside the pleadings. That's also counsel. My concern with this case is that it is a 12 B6 and just how much Judge Starr did at that stage of litigation. Maybe exactly correctly, but that's what is a concern about this case. So it does seem to me to say that judicial notice is as broad at the 12 B6 stage as it might be later is a little concerning, though I don't know where to draw the line. Are you saying there's no difference so long as it's appropriate for judicial notice, summary judgment, bench trial, any time else it's appropriate at 12 B6 stage? Well, Your Honor, what what I would say is that at the 12 B6 stage, the way to discipline the concerns that you're worried about is either to look at whether it satisfies the standards for judicial notice or to address the merits, which is why when Judge King asked her question earlier, we got into the merits of whether what the materials were used for both the argument of alter ego argument. But beyond that, Your Honor, there is no distinction. This court has said this is in the Meyer decision of a decision. Judge King and Judge Stewart, you're both involved with also the judge hall. The whole decision that plane is also rely on. It says that as long as you take a look at what's been pleaded on the face of the complaint and in light of judicially noticeable materials, if there is no dispute or in little words, there's no sort of conclusive reason to go forward. You apply the normal 12 B6 standard and you dismiss. So, for example, Your Honor, if there was a complaint on its face that said there's never been formal litigation and someone came forward with judicially noticeable materials to show that there has been a formal early litigation, you would dismiss regardless of what it said on the face of the complaint, because that's what you're supposed to do at the 12 B6 stage. Thank you. Thank you, Your Honor. So because I think the judicial notice issue is really not difficult to resolve when you look at controlling Supreme Court precedent in this court's cases. Let me turn then to the two issues in the case. One is the fraudulent transfer claim and whether it should have been dismissed on the statute of limitations grounds. And then the second is the alter ego claim and whether that was barred by res judicata. Everyone agrees that the statute here, that section 24.010 of the Texas Business Code provides that it must be filed within one year after the transfer was or reasonably could have been discovered. There's no dispute here that these transfers took place in 2000 and 2001 and that the complaint was filed more than 15 years later in April 2017. It's also clear that plaintiffs acknowledged the fact that they were on notice that the transfers had occurred. So the only question in the words of this court is whether they had a reason and opportunity to do a further investigation to determine whether they had a factual basis for alleging that the transfers were fraudulent. And again, what the district court properly did is walk through what was available to them. The 2002, March 2002 SEC report that's at the record at 3940 made clear that DCI had no assets, no assets at all. And it also made clear that although plaintiffs are alleging here that these only received a couple of hundred thousand dollars from Dynex Capital in the relevant years. There was a January 2003 deposition testimony from DCI's vice president that's at the record at 4178 that made clear both that DCI had no ongoing operations and that it had divested itself of all of its loan. With that information, plaintiffs clearly had both a reason and an opportunity to that's in their third amended petition in the state court based on the idea that DCI had a dire financial situation. They told the jury in their opening statement that every loan to DCI ended up in Dynex Capital's hands and they printed out every UCC filing and which showed the transfers from DCI to Dynex occurring. So it would not have taken much. They had dozens of depositions that were at trial. All they needed to do was ask the next question to the vice president of DCI which is what were the values of those transfers. That would not have been difficult to do. The whole point of the Texas strict statute of repose is to weed out these types of stale claims. Now your honors you heard this morning that plaintiffs basically raised four arguments as to why they think they shouldn't be bound. One in their briefs they talked about all the things that they didn't know but that's a distraction. The key thing is what did they know and they knew from the SCC refiling and from the deposition testimony that DCI had no assets and no operations which would have led a reasonably diligent person to ask well what happened to the value of those assets. So they had both a reason and opportunity to exercise reasonable diligence and inquire further. Plaintiffs next say they could not have reasonably discovered because Dynex Capital still disputes that the transfers were fraudulent but of course this is not the merits question. This is not to resolve whether their claim has merit or not and what I urge you to do is take a look at the record excerpts at 38 43 to 45. That's paragraph 66 and 68 of their federal complaint and their key allegations there are that DCI divested itself all of its assets and that DCI had no operations and my point is if you look at the allegations they're relying on now in order to raise an inference that there was a fraudulent transfer those are the same pieces of information that they had back in 2002 2003 during the first case. They emphasize in the briefing that they say there's no right to discovery but of course that's only true if discovery is not relevant to the claims. Here it would have been relevant because they made this argument that Dynex Capital should have been responsible for DCI and then lastly your honors they say this case is a lot like the Janvey case but the Janvey case in I think you'll recall this that was a very complicated case with a worldwide Ponzi scheme that where essentially the question was whether the receiver had the resources to look into these issues earlier and the court said no it didn't because there were six libraries of congress worth of documents months and months of forensic accounting was required 125 professionals and thousands of hours. Here in complete contrast all they needed to do was ask the question to any of the many witnesses that they deposed what was the value of the transfers they knew that there were transfers they knew there were no assets left with DCI it would have been easy for them to make that asset. Mr. Parrish let me ask you about the third point second point wherever it was in your four-point litany just now let me may sound pejorative I didn't mean it that way the ability of plaintiffs to have pre-judgment discovery on whether the defendant can satisfy judgment that they refer in their briefing Texas rules civil procedure would you dig down a little deeper on that for me to the extent you hadn't already discussed that a few minutes ago how does that play out in your argument that prohibition is it not a prohibition or is it not relevant for other reasons? So your honor it's a prohibition of getting discovery pre-judgment into assets just for the purposes of enforcement but what courts have said and you can see the St. Paul case in the northern district of Texas that they rely on makes this point which is that that doesn't mean you can't ask questions if it's relevant to the claims that are properly before the court at the time so our point is your honor is it's true that courts have stopped parties from doing sort of a free ranging discovery into assets before they get a judgment it's not true that you can't ask questions about these types of transfers when it's relevant to your claims. When should those questions and interrogatories have been presented? Well your honor what I would say is that in this case they argued that Dynex Capital was responsible for the loan commitment and that it along with DCI had fraudulently induced the plaintiffs into doing this they had argued that this was a to the jury that there was an alter ego because all of the assets were being transferred to Dynex Capital and they actually asked the vice president of DCI these precise questions without being prevented from doing so and the vice president answered yes we've made all the transfers yes there are no operations so there's no reason why they couldn't have asked the next logical question which is what would have the value of those transfers would be or was their compensation consideration provided there's nothing that would have prevented from from doing that under the your honor let's have more questions on that let me move to the alter ego claim uh holding counsel is correct correct that the the proper test here is whether it's the same nucleus of operative fat if you take a look at the bar decision that is whether it arises from the same subject matter of the earlier lawsuit that test is satisfied here because they previously tried to hold Dynex Capital jointly and severally liable for breach and for fraudulently inducing plaintiffs into the 160 million dollar loan commitment of course against Dynex Capital they received to take nothing judgment they can't relitigate this your honors perhaps the easiest way to see this is to look at their own reply brief on page 20 what they do there ignore their highlighting but just take a look at the two paragraphs they take paragraph 80 which is their state first amended petition and they compare it to paragraph 73 in their federal complaint if you look at what those two things are saying the paragraph 80 of the state commission says Dynex Capital and DCI induce plaintiffs by misrepresenting facts about the financial stability and their ability to provide the 160 million dollar loan commitment in paragraph 73 in the federal complaint they claim that Dynex Capital used DCI to fraudulently induce plaintiffs to enter into the 160 million dollar loan commitment it's the same subject matter it's the same operative facts even the allegations that they choose to cite show that of course they also in addition to this as we've talked about this is on the record of page 44 96 they tried to argue the alter ego issues to the jury the theory they they argued specifically and i'll just read it to you here try as they may the evidence will show that there is no difference between these two companies the evidence will show that these companies share the same office space the same employees and then they go on on the same page there to say that the evidence will show that every loan made to Dynex Capital ended up in sorry DCI ended up in Dynex Capital hands but the point is that they were arguing to the jury that there was a overlap there was no difference between these companies and that's enough to show that this these two disputes raise the same issues they come out of the same operative fact now your honors again plaintiffs have three arguments in there that they try to raise and none of them have merit they first argue that there can be no res judicata because the second lawsuit can always be filed to collect a judgment against an alter ego that principle does not apply however when the same party is sued in the first lawsuit and you can take a look at the strange case at 408 southwest sector and 658 that we cite for that point it's also not true whereas here they are aware of the facts that are the basis for their alter ego claim remember here the argument is is that at the time the uh uh the loan was made the DCI and Dynex Capital worked together to fraudulently induce them into uh entering that and entering that loan those facts were all available at at the time the litigation was filed they next say that that for res judicata apply the claim must have been available to them in existence when the first suit was filed this is a little bit of misdirection because they're not focusing on the alter ego claim here they're now trying to focus in on the back to the fraudulent transfer issues but of course it was in existence by their own claims their their whole point and this is on the record excerpts at 38 46 paragraph 73 is that there was fraudulent inducement to enter into the loan commitment that was the basis for their alter ego claim of course we're not claiming that the fraudulent transfer claim is barred by res judicata it's already barred by the statute of limitations what we're saying is is that even if the transfer of assets could be used to support an alter ego claim that claim was already available to be litigated in the first lawsuit also in any event the cases that they cite don't support their legal proposition if you take a look at the hernandez case for example which says that the facts must be in existence at the time of the lawsuit the very next sentence says a claim is barred only if it accrued after the original judgment and of course that's consistent with the bar case which is texas's key case on res judicata which makes the point that alternate theories are barred by res judicata you have to have separate cause of action altogether and for that reason bar talks about how parties should be permitted to amend their pleadings through the course of discovery and the discourse discovery can inform them on what theories to press before the jury but that all those theories are barred by res judicata and then last your honors they make this argument at length in their brief that they say that merely because their attorneys made the arguments to the jury at trial that there was these alter egos theories there was a relationship between these parties that that doesn't count as evidence of course we're not making an evidentiary argument we're just making the point under principles of res judicata that these things all arose out of the same operative facts and that's enough for res judicata to apply regardless of whether it's attorney argument or not your honors let me just conclude by saying that the texas's strict statute of repose and its principles of res judicata are designed to weed out exactly these types of stale claims and to prevent multiple bites at the same apple this litigation was litigated more than 20 years ago in state court extensively with sophisticated parties represented by experienced counsel they had their chance to appeal but they chose not to appeal the judgment against dynex capital they are now trying to backdoor that with another litigation the district court got this precisely right and we'd be grateful and urge the court to affirm the district court unless there's any more questions i'll follow them there all right any other questions from the panel thank you all right thank you mr parish we're back to you mr ornette rebuttal thank you your honor and let me start with the uh judicial notice and whether it's completely unbounded on a motion to dismiss with reference to the general retail services case uh and this is a quote from that opinion where the court is talking about what is not considered outside the pleadings and the court says the same is true for various types of exhibits they're attached to the pleadings matters of which the district court can take judicial notice and items of unquestioned authenticity that are referred to in the challenge pleading and are central or integral to the pleader's claim for relief now when you read that that qualifying clause at the end applies to all the categories that came before so judicial notice is first is circumscribed by the requirement that it the matter be referred to in the complaint and that the matter be central to the plaintiff's claims okay otherwise even the fifth circuit can't overrule the supreme court and it does seem to me that the parish is onto something by citing us to tell labs you don't have much time and you don't have to linger on it but that that was something that would you would have to overcome with me to say judicial notice was a problem here because it says documents incorporating the point by reference and matters of which a court may otherwise take judicial notice so i mean that that's the law you may have other points to make on what little time you have and but you certainly can respond to that if you want to well your honor um you know telelabs does say that but telelabs does not go on to say to address whether or not at the motion to dismiss stage the judicial notice is completely unbounded uh it doesn't reach that bounded by what is referenced in the complaint is my only particular point about that quote from telelabs because it said and and matters not only documents incorporated into the complaint by reference and matters of which a court may take judicial notice well that's correct and it doesn't address it doesn't address one way or the other whether those matters have to have to meet the two-part test that uh that applies when you're determining whether you're going outside impermissibly going outside the pleadings or not all right counsel um now with respect to with respect to the fraudulent transfer but let me make clear that the printout of the uh ucc ones occurred after trial um and so to say that we were aware of those transfers those specific transfers while depositions were still going to be wrong uh with respect to whether we could ask questions about them i think joseph like you you you hit the point that i wanted to make which is is this that would have been post-judgment discovery and to say oh well it was relevant to other claims no it wasn't we had we had breach of contract claims we had fraudulent reducement claims we didn't have claims that had anything to do with what they did with their assets after the lawsuit was filed that's the key distinction you know and it goes on it also ignores two important points number one what's the history of what actually happened because the argument is speculative it's oh if you had only asked you would have found out x well the history is and this is referenced in the second amendment complaint that after the judgment was entered to get post-judgment discovery into assets it took multiple hearings and they got sanctioned by the the texas state court because they were so obstreperous and obstructed in terms of giving us discovery it took a lot so the the notion of simply asking a couple of deposition questions would have gotten us the holy grail uh is belied by the actual factual record number two it also ignores the fact that their own position is these transfers never happened notwithstanding what the what is in the public record signed under oath under penalty of perjury by their people notwithstanding that they say oh these transfers never occurred so had we asked presumably we would have got that answer we wouldn't have gotten the answer that yeah no we didn't pay anything for any of these loans uh which is what you know gave us notice that these were fraudulent in terms of the alter ego uh there was not an alter ego claim in front of the in front of the trial court the comments in opening statement were in response to uh vor dire i'm sorry voir dire depending on whether you're i guess texas louisiana um we don't know what the word means in this council had made and frankly you know one of the issues was dynex capital had acquired the new orleans loans by the time the case went to trial and so yes there was there was an argument that they were responsible and the argument after trial was not that they were an alter ego it was not that they were an alter ego uh and i invite you to look at that that post judgment pleading or post verdict pleading which was they caused it therefore they're directly responsible uh that's not an alternative so all right thank you all right thank you both counsel mr ornette mr parish it's a rich case to put it mildly uh we'll dive into it and try to get it resolved so thank you for your briefing in and your oral argument you both are so this is all right